**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **C.A., a minor child**<br>4816 Myrtle Avenue<br>Blue Ash, Ohio 45242<br><br>and<br><br>**INGRID ANDERSON**<br>4816 Myrtle Avenue<br>Blue Ash, Ohio 45242<br><br>and<br><br>**HOUSING OPPORTUNITIES MADE EQUAL, INC.**<br>2400 Reading Road<br>Cincinnati, Ohio 45202<br><br>   **Plaintiffs,**<br>**vs.**<br><br>**CITY OF BLUE ASH, OHIO**<br>4343 Cooper Road<br>Blue Ash, Ohio 45242<br><br>   **Defendant** | **Case No.** 1:14-cv-151<br><br>**Judge** Black<br><br><br>**VERIFIED COMPLAINT FOR**<br>**TEMPORARY RESTRAINING ORDER**<br>**AND DECLARATORY AND**<br>**INJUNCTIVE RELIEF**<br><br><br><br>**JURY DEMAND ENDORSED HEREON** |

## I. PRELIMINARY STATEMENT

This action is brought individually by Ingrid Anderson, on behalf of herself and on behalf of minor daughter C.A., and by Housing Opportunities Made Equal, Inc. ("HOME") for itself and its members (collectively, the "Plaintiffs"). For the purpose of this Complaint against the City of Blue Ash ("Defendant"), Plaintiffs hereby state as follows:

## II.    JURISDICTION & VENUE

1.    Plaintiff C.A. is a minor and an Ohio resident, domiciled in Blue Ash, Ohio.

2.    Plaintiff Ingrid Anderson is an Ohio resident, domiciled in Blue Ash, Ohio and the mother and primary caregiver of C.A.

3.    Plaintiff Housing Opportunities Made Equal, Inc. (hereinafter "HOME") is a non-profit housing agency organized under the laws of Ohio.  HOME is dedicated to eliminating housing discrimination on the basis of race, color, national origin, gender, disability or familial status in the greater Cincinnati area.  Its members are individuals of various races, colors, religions, and ages who reside in communities throughout the Cincinnati Metropolitan area.  HOME devotes a major portion of its time and budget to activities designed to educate the public and eliminate discriminatory housing policies and practices that cause injury to its supporters and to all people seeking access to housing.

4.    Defendant Blue Ash, Ohio is a municipal corporation organized under the laws of the State of Ohio.

5.    The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1367, supplemental jurisdiction, as this matter pertains to 42 U.S.C. 12101, et seq.

6.    Venue is proper pursuant to 28 U.S.C. § 1391(b).

## III.    FACTUAL BACKGROUND

7.  C.A. was born April 21, 2000.

8.  C.A. is 13 years old and is currently approximately 120 pounds.

9.  Ingrid Anderson (hereinafter "Ms. Anderson") is C.A.'s mother and primary caregiver.

10.    C.A. resides with Ms. Anderson at 4816 Myrtle Avenue, Blue Ash, Ohio, 45242.

2

MANLEY BURKE
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI  45202-1098
(513) 721-5525
FAX No. (513) 721-4268

11.     HOME has been assisting Ms. Anderson and C.A. since around August, 2013 with the family's housing matters within the City of Blue Ash.

12.     C.A. is a "disabled person" under the Americans with Disabilities Act (hereinafter "ADA") and an "individual with handicaps" under the Fair Housing Amendments Act (hereinafter "FHAA")

13.     C.A. has suffered from numerous medical ailments since birth.  C.A.'s multiple medical diagnoses include, but are not limited to: seizures, chronic lung disease, gastro esophageal reflux, feeding problems, severe allergies, vision problems, ADHD, developmental delay, autonomio dysfunction, and tachycardia.  Combined, these conditions are degenerative.

14.     Due to her condition, C.A. will never be independent; she will always rely on a caregiver or caregivers to take care of her.

15.     C.A. has trouble balancing or walking independently.

16.     C.A. communicates verbally and with American Sign Language.

17.     Ambulation is particularly difficult for C.A. in situations where she must change directions or navigate varying ground levels.

18.     C.A. cannot control her limbs while walking without assistance, making independent movement erratic, unstable and difficult.

19.     C.A.'s ability to control her limbs and walk steadily and in a straight line are increased significantly when she holds on to something steady, like a person's forearm.

20.     Even with physical assistance, C.A. tires and experiences muscle weakness very quickly.

21.     When C.A. falls, she needs assistance to get back to her feet.

3

MANLEY BURKE
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI 45202-1098
(513) 721-5525
FAX No. (513) 721-4268

22.     Due to C.A.'s worsening scoliosis and other physical maladies, as doctors have recommended, it is vital for C.A. to remain as mobile as possible on a daily basis.

23.     Maintaining C.A.'s mobility involves the use of physical therapy sessions with a licensed physical therapist as often as possible, preferably daily.

24.     Maintaining C.A.'s physical therapy sessions at the ideal frequency is financially and practically infeasible.

25.     In order for C.A. to remain regularly active over the long-term, C.A. must have the ability to navigate outside independently.

26.     C.A. needs constant assistance to maintain her daily physical activity

27.     C.A. requires the assistance of a service animal, "Ellie", a miniature horse who assists her in remaining active and independent at home.

28.     Ms. Anderson learned of the use of miniature horses as therapy through Dr. Ron Levin at Cincinnati Children's Hospital in 2010.

29.     C.A. benefitted from equine therapy at a Hamilton County Parks facility in 2010.

30.     Because of the positive effects of that therapy, and C.A.'s need for ongoing physical activity, Dr. Levin prescribed for C.A. "equine therapy at home at her disposal" in 2010.

31.     Ellie is C.A.'s current service animal, a Blue-Eyed Palomino miniature horse, trained to do work and perform tasks required of her as a service animal for the benefit of C.A..

32.     Ellie will understand and obey commands from C.A. and from other people.

33.     Ellie is familiar with a number of verbal commands and hand gestures, including some that are American Sign Language.

4

MANLEY BURKE
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI  45202-1098
(513) 721-5525
FAX No. (513) 721-4268

34.     In order to navigate the yard independently, C.A. relies on Ellie's assistance. C.A. holds on to Ellie's mane and is steadied enough to walk and play without the assistance of other people.

35.     C.A. holds on to Ellie's mane to "drive" the horse in the direction she wants to go, providing the commands of "go" or "whoa" verbally or through gestures.

36.     Ellie is trained to pull C.A.'s stroller with those commands just as she is when she is not hooked to the stroller.

37.     C.A. can control her limbs and walk straight when holding on to Ellie's mane with her right hand, similar to the assistance C.A. receives when holding on to a human's arm.

38.     C.A. falls often and needs assistance to get back on her feet.  When this occurs, Ellie is trained to stand still and brace C.A., providing her the ability to pull herself up off of the ground with the help of Ellie and without the assistance of other people.

39.     As C.A. inevitably experiences muscle weakness and fatigue while physically active, the horse's assistance results in C.A.'s ability to remain outside and active for longer periods of time.

40.     Ellie's presence facilitates C.A.'s interactions with other children and adults; encourages her to go outside and be physically active more often and for longer periods of time, and promotes her mental, emotional and physical independence.

41.     Ellie is trained to accept food calmly from an open hand, in contrast to most horses' tendency to take food from a hand in a more aggressive manner.  C.A. knows the open hand gesture necessary for feeding Ellie.

5

MANLEY BURKE
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI 45202-1098
(513) 721-5525
FAX NO. (513) 721-4268

42.     Ellie is trained to go up and down steps, an action that horses typically will not readily perform but that is necessary when aiding C.A. in environments, such as her backyard, that include stairs.

43.     Ellie is trained to take direction to do other things a horse typically would not do, such as stepping into the center of a tire on the ground or to walk "see-saw," - up plank and then down.

44.     Ellie knows "back up," communicated to her by a clicking noise.

45.     Ellie has received considerable "desensitization" training with respect to situations where a horse may ordinarily be startled. Ellie can be approached from any angle or touched without warning and will remain calm and has been trained to withstand the typical roughhousing from children - touch eye, pull on ears, etc.

46.     Ellie's training is currently focused on tasks that are useful in assisting C.A. in the confines of the Anderson property and to tasks required for pulling C.A.'s stroller.

47.     However, Ellie's training is also geared toward the possibility that someday Ellie will be permitted to accompany C.A. in a variety of settings - parks, school picnics, and around children in public spaces.

48.     Over time, Ellie's training has caused her knowledge of what is expected of her to become more refined – for example, the routine of what is expected of her causes her in many instances to instinctively know to stop and stay without the commands constantly being given, improving her utility to C.A..

49.     Several of the tasks performed by Ellie, such as her ability to brace C.A. when she pulls herself off the ground, and her ability to pull C.A.'s stroller, are tasks that service dogs are less equipped or unable to do.

MANLEY BURKE
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI 45202-1098
(513) 721-5525
FAX NO. (513) 721-4268

50.    C.A. has a service dog who acts as a seizure response dog.

51.    The seizure response dog cannot help with C.A.'s mobility; she sleeps nearby C.A. and alerts others when C.A. is having a seizure.

52.    As C.A. has gotten older and bigger, Ms. Anderson's ability to assist C.A. has grown more difficult, heightening the need for a service animal like Ellie that is equipped to meet C.A.'s needs.

53.    Given Ms. Anderson's limited use of her arm and hand, as a result of a work-related injury that has required 19 surgeries, the importance of Ellie's availability is intensified.

54.    Ms. Anderson obtained C.A.'s first service horse in or around 2010 while Ms. Anderson and C.A. lived within the City of Blue Ash at 4924 Prospect Avenue.

55.    Ms. Anderson and C.A. moved from another Blue Ash home to 4816 Myrtle Avenue in the City of Blue Ash in or around August 2012.

56.    Ms. Anderson obtained Ellie, the miniature horse which is the subject of this litigation, in or around August, 2012.

57.    The City of Blue Ash has repeatedly clashed with Ingrid Anderson, and through her with C.A., over the use of a miniature horse as a necessary service animal.

58.    After some dispute, Blue Ash agreed to permit the Andersons to keep a miniature horse as a service animal for C.A. at their home in Blue Ash.

59.    Subsequently, Blue Ash amended its Municipal Code to prohibit Farm Animals and applied that criminal ordinance against Ingrid Anderson for keeping Ellie at her home. (Ms. Anderson was also fined for having an alpaca at her home. Ms. Anderson does not challenge, in this action, the ordinance's prohibition against any other animals, other than the miniature horse which serves as a service animal for C.A.)

MANLEY BURKE
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI 45202-1098
(513) 721-5525
FAX NO. (513) 721-4268

60.     On March 15, 2011, the rules under the Americans with Disabilities Act were amended to include a requirement, per 28 C.F.R. § 35.136(i), that public entities must make reasonable modifications in policies, practices, or procedures to permit the use of a miniature horse by an individual with a disability.

61.     Defendant was on notice that, per 28 C.F.R. § 35.136, all public entities, including itself, must, "modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability."

62.     On January 10, 2013, the City of Blue Ash passed Ordinance # 2013-1, a certified copy of which is attached hereto, amending Chapter 550, Animals and Fowl, to include the following:

> **505.21 FARM ANIMALS PROHIBITED:**
> (a) No person shall shelter, maintain, keep, or harbor live equine (horse), ovine (sheep), bovine (cow), caprine (goat), swine (pigs), or camelid (camel, llama, alpaca) on any residential property within the municipal limits of the City of Blue Ash, Ohio, except as follows:
>   (1) Animals which are otherwise specifically permitted elsewhere in the Municipal Code or permitted by Hamilton County, Ohio State, or Federal law; or
>   (2) Animals which are kept by a public entity or a public or private school that is chartered by the State of Ohio Department of Education; or
>   (3) Animals that are caged or otherwise confined while being transported to or through the City.

63. C.A.'s use of a miniature horse as a service animal is permitted under Federal Law, specifically, 28 C.F.R. § 35.136(i).

64. Despite Defendant's knowledge that C.A. is "disabled person" under the ADA, its knowledge of 28 C.F.R. § 35.136(i), and its knowledge that Ellie assists C.A. as a service animal pursuant to a doctor's prescription, the City of Blue Ash Council enacted Ordinance # 2013-1.

8

MANLEY BURKE
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI 45202-1098
(513) 721-5525
FAX NO. (513) 721-4268

65. Prior to the enactment of the Ordinance, Ellie regularly assisted C.A. beyond the confines of the Anderson property by pulling C.A.'s stroller.  Once the Ordinance was enacted, Ms. Anderson ceased this activity for fear of prosecution and kept Ellie confined to her property.

66. On January 31, 2013, Defendant sent a letter to Ms. Anderson describing the recently enacted Ordinance # 2013-1, stating that it will go into effect on February 20, 2013, and that she will be prosecuted for any violations of the ordinance occurring on or after that date.

67. On February 21, 2013, Officers Schueler and Hartinger came to Ms. Anderson's home and warned her about the enactment of Sec. 505.21, stating that she will be required to remove Ellie from the property.

68. At that time, Ms. Anderson communicated to the Officers that Ellie is a service animal under Federal law and is therefore exempt from the City's law prohibiting "farm animals".

69. Shortly thereafter, Ms. Anderson removed Ellie from the property for fear of prosecution.

70. After several weeks without Ellie's assistance, C.A. again began to deteriorate; the provision of adequate outdoor physical activity for C.A. again became difficult.

71. Since Ms. Anderson understood Ellie to be a service animal and C.A.'s condition was degrading absent the assistance of Ellie, Ms. Anderson returned Ellie to their property to assist C.A. and to prevent C.A.'s further deterioration.

72. Despite its knowledge that C.A. is "disabled person" under the ADA, its knowledge of 28 C.F.R. § 35.136(i), and its knowledge that Ellie assists C.A. as a service animal pursuant to a doctor's prescription, Defendant, City of Blue Ash, enforced the city ordinance § 505.21(a) against Ms. Anderson on July 8, 2013 and again on July 16, 2013.

9

MANLEY BURKE
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI 45202-1098
(513) 721-5525
FAX No. (513) 721-4268

73. On July 24, 2013, Ms. Anderson requested a reasonable accommodation under the FHAA, whereupon the City would withdraw its citations against Ms. Anderson under BAMC § 505.21(a) and allow her daughter C.A. to maintain one service horse on the Anderson property.

74. Defendant never responded to Ms. Anderson's requested reasonable accommodation.

75. Ms. Anderson was convicted of the violations of City Ordinance § 505.21(a) on November 13, 2013.

76. This action by the City of Blue Ash resulted in Ms. Anderson promptly removing Ellie from her property at 4816 Myrtle Avenue for fear of further prosecution.

77. Following Ms. Anderson's charges under the City of Blue Ash Code § 505.21(a), Ellie has remained on a relative's property in Brown County, Ohio.

78. C.A. is unable to perform the doctor-prescribed "equine therapy at home" as a direct result of Defendant's discrimination.

79. C.A. now relies on the assistance of other people, such as Ms. Anderson, when playing and walking outside.  This loss of C.A.'s independence is a direct result of Defendant's discrimination.

80. C.A. has reverted back to a more reserved, sedentary lifestyle in Ellie's absence.

81. The family members have increased their physical assistance to C.A. in Ellie's absence, including many things where Ms. Anderson must perform activities that she physically has difficulty doing, or is unable to do, given the injuries to her left arm and hand.

82. Since Ellie's service animal training remains effective with consistency and daily use, Ellie's absence from the Anderson home has caused some regression in her training, despite Ms. Anderson and C.A. visiting the horse in Brown County as frequently as is practical.

10

MANLEY BURKE
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI 45202-1098
(513) 721-5525
FAX NO. (513) 721-4268

83. As a proximate result of Defendant's discriminatory policies and practices, HOME and its members, including Plaintiffs Ms. Anderson and C.A., have suffered and continue to suffer damages including financial harm, the deprivation of their civil rights, and the deprivation of living a peaceful existence in their home within the City of Blue Ash.

## IV.    DECLARATORY RELIEF AS TO THE ADA

84. Plaintiffs restate and incorporate by this reference each allegation contained in paragraphs 1 through 83 as if fully set forth herein.

85. The City of Blue Ash acted unlawfully in violation of the ADA and in violation of its own city ordinance § 505.21(a)(1), which excepts from the "farm animal" prohibition any equine which, "are otherwise specifically permitted…by (sic) Federal law…"

86. Defendant has refused to acknowledge its obligations under the ADA as to service animals within the City.

87. Defendant enacted Blue Ash Municipal Code § 505.21(a) specifically to prevent C.A. from having the assistance of the miniature horse at her home within the City of Blue Ash.

88. Defendant's actions permitting and then later prohibiting C.A. from keeping a miniature horse at her home for assistance has caused C.A. emotional distress.

89. Defendant engaged in discrimination against Ms. Anderson as a result of her status of a mother of a disabled child.

90. Defendant's unlawful policies and practices have damaged Ms. Anderson.

91. Defendant's ongoing harassment of Ms. Anderson and prosecution of Ms. Anderson for laws from which she is exempt have taken considerable time away from her care for C.A., have caused significant emotional distress, and have caused considerable loss to the progress and money Ms. Anderson spent training an animal intended for use as a service animal for C.A..

11

MANLEY BURKE
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI 45202-1098
(513) 721-5525
FAX NO. (513) 721-4268

92. Defendant's unlawful policies and practices have damaged C.A.

93. Defendant's unlawful policies and practices have frustrated and impaired HOME's advocacy and counseling efforts designed to fight housing discrimination. HOME has been forced to divert funds from its other necessary and valuable testing, education, counseling, and referral services HOME provides to the public in attempt to work with Ms. Anderson and C.A. to prevent Defendant's unlawful discrimination.

94. Defendant, the City of Blue Ash, has violated 42 U.S.C. 12101, et seq. through its refusal to recognize a reasonable accommodation under the ADA and by enforcing the farm animal prohibition Ordinance against a service horse.

95. Defendant, the City of Blue Ash, has failed to make reasonable accommodations for C.A.'s use of a service horse, in violation of 28 C.F.R. § 35.136(i).

96. Defendant, the City of Blue Ash, has violated its own city ordinance, which exempts from the farm animal prohibition any animals which are otherwise permissible under Federal Law, including the Americans with Disabilities Act.

97. Plaintiffs request that after notice and hearing that the Court enter judgment that Defendant, the City of Blue Ash, has enforced policies, regulations, and practices and has engaged in conduct that have interfered with C.A.'s use of her service animal in violation of the Americans with Disabilities Act.

## V.  DECLARATORY RELIEF AS TO THE FHAA

98. Plaintiffs restate and incorporate by this reference each allegation contained in paragraphs 1 through 96 as if fully set forth herein.

99. Defendant, the City of Blue Ash, has violated 42 U.S.C. § 3601, et seq., of the Fair Housing Act by failing to provide reasonable accommodations to a handicapped person.

12

MANLEY BURKE
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI 45202-1098
(513) 721-5525
FAX NO. (513) 721-4268

100.    Defendant, the City of Blue Ash, has violated its own city ordinance, which exempts from the farm animal prohibition any animals which are otherwise permissible under Federal Law, including the Fair Housing Act.

101.    Plaintiffs request that the Court enter judgment that Defendant, the City of Blue Ash, has enforced policies, regulations, and practices and has engaged in conduct that have interfered with C.A.'s use of her service animal in violation of the Fair Housing Act.

## VI.    TEMPORARY RESTRAINING ODER AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

102.    Plaintiffs restate and incorporate by this reference each allegation contained in paragraphs 1 through 100 as if fully set forth herein.

103.    Plaintiffs seek temporary, preliminary and permanent injunctive relief restraining the City of Blue Ash from enforcing the city ordinance prohibiting farm animals, with respect to C.A.'s service horse.

104.    Plaintiffs request that the Court order Defendant to permit service horse Ellie to return immediately to Plaintiffs' property at 4816 Myrtle Avenue without fear of prosecution by the City of Blue Ash.

105.    A temporary restraining order and a preliminary injunction are warranted because (1) at trial, C.A. is likely to prevail on the merits because the ADA service animal provisions provide that miniature horses are acceptable service animals and because the service horse Ellie is clearly a reasonable accommodation; (2) without the use of her service horse, C.A. will suffer irreparable harm due to the fact that Ellie is a medically-prescribed necessity, C.A.'s ability and will to be independently physically active outside has decreased considerably upon the absence of Ellie, and Ellie's isolation from C.A. and the tasks she has been trained to do is diminishing

MANLEY BURKE
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI  45202-1098
(513) 721-5525
FAX No. (513) 721-4268

Ellie's training; (3)balance of equities tips in her favor because the harm C.A. and Ms. Anderson will sustain if this preliminary injunction is not granted is far greater than any potential harm the Defendant may sustain; and (4) the issuance of a preliminary injunction is in the public's interest.

106.     Plaintiffs further request that the Court order that Defendant is permanently precluded from enforcing its city ordinance restrictions that apply to farm animals in Blue Ash, Ohio against Ellie or any other substitute miniature horse used by C.A. as a service animal.

107.     Plaintiffs further request that the Court order that Defendant is precluded from enforcing its city ordinance restrictions against all disabled persons similarly situated to the Plaintiffs.

## VII.     DAMAGES

108.     Plaintiffs restate and incorporate by this reference each allegation contained in paragraphs 1 through 106 as if fully set forth herein.

109.     The Andersons have been damaged financially as a result of the conduct of the Defendant and are entitled to both compensatory and punitive damages in amounts to be determined at trial.

110.     HOME has been damaged financially as a result of the conduct of the Defendant and is entitled to both compensatory and punitive damages in amounts to be determined at trial.

111.     HOME has been damaged financially as a result of the conduct of the Defendant.

## VIII.     ATTORNEY FEES & COSTS

112.     Plaintiffs restate and incorporate by this reference each allegation contained in paragraphs 1 through 110 as if fully set forth herein.

113.     Plaintiffs herein seek attorneys' fees and costs pursuant to the ADA. See 42 U.S.C. § 12133; 29 U.S.C. § 794a.

14

MANLEY BURKE
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI 45202-1098
(513) 721-5525
FAX NO. (513) 721-4268

## IX.    PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs, C.A., Ingrid Anderson, and HOME hereby request that this Court:

A. Declare the enforcement of the Blue Ash Municipal Code § 505.21(a) against Ms. Anderson is unlawful.

B. Declare Defendant's acts and omissions as described above to be in violation of the Americans with Disabilities Act (42 U.S.C. 12133).

C. Declare Defendant's acts and omissions as described above to be in violation of the Fair Housing Act.

D. Grant Plaintiffs' request herein for preliminary and permanent injunctive relief enjoining Defendant from denying C.A. her rights under federal law by prohibiting her from maintain her service horse as a reasonable accommodation for her disability.

E. Find that any order of injunctive relief entered into this case is made against City Defendant in favor of all disabled persons similarly situated to the Plaintiffs, pursuant to Fed. R. Civ. Pro. 71.

F. Award attorney's fees, costs and expenses incurred by Plaintiffs in this action pursuant to statute.

G. Award compensatory damages for the Defendant's discrimination of Plaintiffs pursuant to statute.

H. For any further relief the Court deems just and appropriate under the circumstances.

15

MANLEY BURKE
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI  45202-1098
(513) 721-5525
FAX No. (513) 721-4268

Timothy M. Burke     (0009189)
Kathleen A. Farro     (0090039)
Manley Burke LPA
225 W. Court Street
Cincinnati, Ohio 45202
Phone: (513) 721-5525
Fax:     (513) 721-4268
tburke@manleyburke.com
kfarro@manleyburke.com

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Kathleen A. Farro     (00090039)

16

**MANLEY BURKE**
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI  45202-1098
(513) 721-5525
FAX No. (513) 721-4268

## **VERIFICATION**

Under penalty of perjury under the laws of the United States of America and the State of

Ohio, I declare that I have read the foregoing, and that the facts alleged therein are true and

correct to the best of my knowledge and belief. I understand that a false statement in this

Verification will subject me to penalties of perjury.

Ingrid Anderson


Sworn before me and subscribed in my presence this 14th day of February, 2014.

*Kathleen A. Farro*
Kathleen A. Farro
Attorney at Law, Notary Public State of Ohio
My commission never expires, O.R.C. § 147.03

N:\CLIENTS\Anderson, Ingrid\Pleadings\Anderson Complaint Draft.docx

17

**MANLEY BURKE**
A LEGAL PROFESSIONAL ASSOCIATION

225 WEST COURT STREET
CINCINNATI 45202-1098
(513) 721-5525
FAX No. (513) 721-4268